# INDEPENDENT BUILDING CONSTRUCTION

# AGREEMENT

between

and

# DISTRICT COUNCIL OF NEW YORK CITY AND VICINITY OF THE UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, AFL-CIO

## JULY 01, 2001 - JUNE 30, 2006

# INDEX

**Article**                                                    **Page**

| | | |
|---|---|---|
| I. | Objectives | 1 |
| II. | Jurisdiction | 2 |
| III. | Union Recognition | 14 |
| IV. | Union Security | 14 |
| V. | General Foreman - Foreman Hiring Schedule | 16 |
| VI. | Non Discrimination Clause - Job Referral System. | 16 |
| VII. | Lumping Prohibited | 20 |
| VIII. | Geographical Jurisdiction | 21 |
| IX. | Joint Venture | 21 |
| X. | Hours - Holidays - Overtime | 22 |
| XI. | Wages | 27 |
| XII. | Grievance Procedure | 33 |
| XIII. | No Strike - No Lockout | 35 |
| XIV. | Validity | 36 |
| XV. | Fringe Benefit Funds | 36 |
| XVI. | Surety Bond | 46 |
| XVII. | Miscellaneous Conditions | 49 |
| XVIII. | Promotional Fund | 60 |
| XIX. | Expiration Clause | 60 |
| XX. | Retroactivity | 61 |
| XXI. | Effectuating Clause and Signatories | 62 |

**AGREEMENT** made and entered into this 1st day of July 2001 and effective as of July 1, 2001, between:

HEREIN REFERRED TO AS
(THE "EMPLOYER")

**and the**

DISTRICT COUNCIL OF NEW YORK CITY AND
VICINITY OF THE UNITED BROTHERHOOD OF
CARPENTERS AND JOINERS OF AMERICA
HEREIN REFERRED TO AS
(THE "UNION" and/or THE "DISTRICT COUNCIL")

## ARTICLE I

### Objectives

To establish and maintain wages, hours and working conditions for the work covered by this Agreement in the territory to which it applies to prevent strikes and lockouts; to insure the peaceable adjustment and settlement of any and all grievances, disputes or differences that may arise between the parties as such or between them as Employer and employee, and to provide for the adjustment of disputes between trades and jurisdictional disputes.

1

## ARTICLE II

## Jurisdiction

**Section 1.** As used in this agreement, the words CARPENTER FOREMAN, CARPENTER GENERAL FOREMAN, JOURNEYMAN, CARPENTER, JOURNEYMEN CARPENTERS, and JOURNEYMEN CARPENTER APPRENTICES, are understood to include all employees performing jobs referred to in **Section 2** below.

**Section 2.** The Employer is desirous of employing Carpenters, Carpenter Apprentices, Hod Hoist Carpenters, Joiners, Millwrights, Pile Drivers, Dockbuilders, Divers, Cabinet Makers, Bench Hands, Stair Builders, Millmen, Wood and Resilient Floor Layers and Finishers, Carpet layers, Shinglers, Siders, Insulators, Acoustic and Dry Wall Applicators, Casket and Coffin Makers, and all those engaged in the operation of wood-working or other machinery required in the fashioning, milling or manufacturing of products used in the trade, or engaged as helpers to any of the above divisions or sub-divisions, and the handling, erecting and installing material on any of the above divisions or sub-divisions consistent with the Constitution and Laws of the United Brotherhood of Carpenters and Joiners of America. Burning, welding, rigging, and the use of any and all instruments or tools for layout work, incidental to the trade.

DRYWALL

2

All work in connection with the installation, erection and/or application of all materials and component parts of walls and partitions regardless of their material composition, purpose or method or manner of their installation attachment or connection, including but not limited to the following items: all floor and ceiling runners, studs, stiffeners, cross bracing, fire-blocking resilient channels, furring channels, doors and windows including frames, casing, molding, base, accessory trim items, gypsum drywall materials, laminated gypsum systems backing board, finish board, fire-proofing of beams and columns, fire-proofing of chase, sound and thermal insulation materials, fixture attachments, including all layout work, preparation of all openings for lighting, air vents or other purposes and all other necessary or related work in connection therewith.

All work in connection with the installation and erection of all gypsum wallboard to receive a veneer coat of plaster or lath to receive traditional plaster if such materials are to be secured to nailable or screwable metal studs.

ACOUSTICAL CEILING SYSTEMS - Six (6) General Types:

1.    Direct hung suspension system.

2.    Attached concealed system without backing board.

3.    Furring bar attached system.

4.    Furring bar suspension system.

3

5.    Indirect hung suspension system.

6.    Metal ceilings, in accord with International Agreement of
      April 1, 1978 between Sheet Metal Workers International
      Association and United Brotherhood of Carpenters and Joiners
      of America.

All work necessary for the installation of the above ceiling systems shall be installed according to the decision rendered by the National Joint Board for the Settlement of Jurisdictional Disputes Hearings Panel Decision of August 24, 1966.

Metal Trim, Interviewers, Door Knockers and Mechanical Chimes, Constructing and securing of all boxes, wood and/or Metal Floor and Wall Penetrations in Reinforced Concrete Construction; Pre-fabricated Tile Panels, Fiberglass, Compositions, and/or any other Wood substitute material; Wood and Metal Store Fronts, Building Entrances, Elevator Entrances, etc.; fabricate and install all pre-cast and pre-stressed concrete members used in all types of Building Construction; Fabricate and install Partitions (including landscape modular partitions), Dividers and Sliding Doors, constructed of Wood, Metal, Plastic, Composition and/or any other substitute material; Fabricate and install all Kalamein Work and Hollow Metal Work.

The term "CARPENTER" and the term "JOINER" are synonymous, and in either case shall mean one who pre-fabs or constructs forms for

footings or foundations of housing, buildings, structures of all descriptions, whether made of wood, metal, wire mesh, plastic or any other type of material, the erecting of structural part of a house, building, or structure made of wood or any substitute such as metal, plastics or composition material, who puts together roofs, partitions, fabricates or erects forms for decking or other structural parts of houses, buildings, or any structure, and dismantling of all forms. The fabrication, erecting and dismantling of all falsework, where power is used for the setting or dismantling of forms or any other material erected by Carpenters. All handling and signaling shall be done by Carpenters. The fabrication and/or setting of all templates including anchor bolts necessary for structural members or machinery and the placing and/or leveling of these bolts is included. All shanties shall be assembled by Carpenters on the job whether they are built in place or they are knockdown shanties as long as it is within that Employers power to do so.

Installing, erecting, removing and placing of building material, platforms and bucket hoisting equipment (generally known to the trade as Hod Hoists), and repairing of equipment consisting of catheads, elevators, rails and all other parts made of wood, metal or any other substitute material and any other work and jurisdiction now in the possession of the Hod Hoist Carpenters,

members of Local Union 1536, which is not in conflict with any other Union affiliated with the AFL-CIO.

All work pertaining to Test Boring and Core Drilling under the jurisdiction of Local Union 1536.

All framing in connection with the setting of metal, plastic, wood or other materials, pre-fab and job site fabricated, columns, the setting of forms, centers and bulkheads, the fabrication and setting of screeds and stakes for concrete and mastic floors where the screed is notched or fitted or made up of more than one member. The making and setting of all forms used in concrete work.

The installation of all moldings made of wood, metal, plastic or composition, installing of runstrips for plumbers or other trades or cutting for pipes through floors, joists or partitions composed entirely or in part of wood, metal, plastic, pre-molded plaster or other material erected by Carpenters.

The installation of all framework partitions and trim materials for toilets and bathrooms made of wood, metal or plastics or composition materials, fastening on all wooden, plastic, metal or composition cleats to iron work or on other material; the erecting and installation of stran steel or similar material; cutting and hanging all lumber or other materials between girders and joists for fireproofing or concrete centers; setting and hanging of all sash, doors, inside and outside blinds, windows and

6

frames for these items, erection or application of all wood, wood pulp, plastic, plaster transite or composition materials.

Any combination of any of the above with any other material including laminates or faced with metal regardless of the manner attached.

Cutting and applying of all furring; bridging, making and fastening of wood brackets or replacement materials for metal ceilings and side walls; erecting of all wood furring for cornices and putting on all grounds for plaster and cement finish. The building and constructing of all derricks; the making of mortar boards, boxes and trestles, putting in needle uprights, all shoring of buildings, raising and moving buildings.

The building, erecting and dismantling of scaffolding and staging; all free-standing scaffolds shall be in accordance with the Decision of Record on Scaffolds rendered on April 28, 1920.

Fitting, installing and fastening of stops, beads and moldings in doors and windows; framing of all false work, derricks and hoists, travelers and all other lumber or material used in the building and construction industry; putting on all hardware; putting up interior and exterior trim or finish of wood. The hanging, setting and installation of wood, metal, plastic or any other wood substitute material; all types of doors, sash, jambs, bucks, casings, moldings, chair rails, mantels, base or mop board;

wainscoting, furniture, china closets, kitchen cabinets, wardrobes, and installation of bowling alleys.

The manufacturing and erecting of cooling towers and roof tanks.  The installation of wood, plastic, or metal awnings, door shelters, marquees and jalousies.  The laying and finishing of all floors including wood, cork, asphalt, linoleum, vinyl, rubber or any other type of resilient floor or wall covering.  The installation of rugs, carpets, draperies and curtains.  The application of acoustic tile whether glued or nailed; acoustical suspended ceilings in its entirety.

Building and erecting stairs, store, office, bank and other fixtures, shelving, racks whether of wood or other material; making and fitting of screens, putting on weather strips and caulking. The installation of laboratory equipment including cabinets and wood benches, book cases and cabinets, either separately or used in conjunction with heating and/or air-conditioning units, blackboards, bulletin boards, meter-boards, electrical boards, and boards of all types.

Manufacture of and erection of walk-in refrigeration boxes and all work in connection thereof.

The installation of insulation material of all types, whether blown, nailed, or attached in other ways to walls, ceilings, and floors of new and existing buildings, shall be the work of the

8

Carpenter.

The handling of lumber, fixtures, trim or other materials erected by Carpenters. The erection of porcelain enameled panels and all corrugated, flat or other wood, plastic, metal or composition roofing and metal siding. The assembling and setting of all seats in theaters, halls, churches, schools, banks, stadiums, and open-air theaters, and other buildings; installing of wood, metal and plastic corner beads; erecting mortar and brick hoists and concrete distributors used in erecting buildings or fireproofing floors, or for pouring concrete buildings, building and repairing coal pockets, breakers, washers, tipples; setting of forms for sidewalk, sidewalk lights, curb and gutters, all welding and burning incidental to carpentry.

The operation of winches and jacks whether operated manually or operated mechanically by portable operating devices, used to handle material to be installed or erected by members of the United Brotherhood of Carpenters and Joiners of America and all tagging and signaling incidental to the trade.

Ribs required for centers may be cut in the shop, but all other parts for centers shall be cut on the job and all centers shall be assembled on the job. All concrete form work shall be under the supervision of the Carpenter Foreman.

Stripping of all concrete forms including the stripping of all

9

columns, beam sides and beam bottoms, wall and footing forms of all types and construction and the stripping of all concrete forms on building construction shall be performed with an equal number of Carpenters and laborers under the supervision of the Carpenter Foreman.

All layout work necessary to the Trade, and the use of any Level, Transit, Laser Beam, or any Optical Instrument required by the Carpenter for the completion of job or project.

All protection work under the Carpenters' jurisdiction on any building, heavy construction, including asbestos, lead or other hazardous abatements or alterations, all perimeter protection work including the installation and maintenance of horizontal and vertical safety nets, must be performed by Carpenters employed by the General Contractor, Prime Contractor, Builder or Sub-Contractor so assigned by the General Contractor, Prime Contractor or Builder.

The setting of all curbing inside the property line. The installation of hardware for draperies and blinds. The installation of metal windows, pursuant to the terms of an International Agreement between the Brotherhood of Carpenters and the Iron Workers International Union, dated June 1, 1987.

No work normally built by Carpenters on the job will be fabricated off the job with anyone other than Union Carpenters being paid the rate of wages and benefits provided herein.

10

The Contractor agrees to recognize the jurisdictional claims of the United Brotherhood of Carpenters and Joiners of America that have been established in its constitution and laws, by agreements with other crafts, awards contained in the Green Book, or as a result of decisions by the National Joint Board for the Settlement of Jurisdictional Disputes, or it's successor or which are recognized as being the jurisdiction of the United Brotherhood and further agrees to assign all work to Carpenters, subject to existing practices and agreements and future jurisdictional decisions.

Section 3. The handling, unpacking, distributing and hoisting of materials to be installed and/or erected by employees covered by the agreement shall be done by apprentices.

Work not covered by this agreement:

(a) Carrying and hoisting of lumber for concrete work.

(b) Hanging joists with steel wires from steel beams which set as carrying members on concrete form work.

Section 4. Every Prime Contractor, Owner-Builder or Subcontractor, bound by this Agreement, recognizes the jurisdictional claims of the United Brotherhood of Carpenters and Joiners of America. Both sides are bound by the decisions of the New York Plan for the Settlement of Jurisdictional Disputes and of the National Joint Board for the Settlement of Jurisdictional

11

Disputes and any successor body authorized by the United Brotherhood of Carpenters and Joiners of America and the Employer Association to resolve jurisdictional disputes issued prior to the effective date of the agreement subject to any appeals now pending. The Employer agrees to assign work in accord with the aforesaid jurisdictional claim, subject to their consistency with decisions of the New York Plan, National Joint Board for Settlement of Jurisdictional Disputes or its successor.

**Section 5.**  No signatory Employer or his Sub-Contractor will sublet to another Contractor, on a lump-sum basis, the safety protection of openings and stairways.  This does not include the planking or other protection of openings in concrete arches, during the form work stage, until the time of stripping; nor does it include a restriction on the subletting of sidewalk bridge construction or maintenance.  Nothing in this Agreement will forbid the Contractor having an agreement with the District Council of New York City and Vicinity from hiring on his payroll on a temporary basis, Carpenters who may be performing work for other Contractors on the same jobsite, or to perform protection work on time-and-material basis.

**Section 6.**  When the Employer desires to engage in Millwright work within the jurisdiction of Millwright and Machinery Erectors Local Union 740, then it shall be governed by the appropriate

12

agreement, signed between the District Council and the Association of the Employer engaged in such work.

Section 7.  When the Employer desires to engage in work within the jurisdiction of Dockbuilders, Pier Carpenters, Shorers, House Movers, Pile Drivers, Divers, Tenders and Foundation and Marine Constructors, Local Union No. 1456 of Greater New York, New Jersey and Vicinity, then it shall be governed by the appropriate agreement, signed between the District Council and the Association of Employers engaged in such work.

Section 8.  When the Employer desires to engage in work within the jurisdiction of Timberman, Hod Hoist Carpenters, Core Drillers Local Union 1536, then it shall be governed by the appropriate agreement, signed between the District Council and the Association of Employer engaged in such work.

Section 9.  When the Employer desires to engage in resilient floor covering work, Local Union 2287, then it shall be governed by the appropriate agreement, signed between the District Council and the Association of Employers engaged in such work.

Section 10.  When the Employer desires to engage in manufacturing custom fixtures and mill-cabinet products, within the jurisdiction of Local 2090, then it shall be governed by the appropriate agreement signed between the District Council and the Association of Employers engaged in such work.

13

## ARTICLE III

## Union Recognition

**Section 1.** The "Principles" listed in this **Article** are intended for the general betterment of the Construction Industry and especially as affecting the parties of this Agreement. If, in their enforcement, any confusion or misunderstanding arises as to their meaning or interpretation, such differences shall be settled as provided for in **Article XII** of this Agreement.

**Section 2.** The Employer recognizes the Union as the exclusive bargaining representative for all the employees referred to in **Article II** above.

**Section 3.** No person representing the Union, except its Business Manager, Business Representatives, Representatives of the District Council, Assistant Business Representatives, Executive Officers, Assistants to the President, and on-site Job Steward, shall have the right to interview the workmen during business hours. These Union Representatives shall comply with all general conditions of the job regarding passes, entrance to be used, etc.

## ARTICLE IV

## Union Security

**Section 1.** All employees who are members of the Union at the time of signing of this Agreement shall continue membership in the

14

Union. All other employees must become members of the Union seven (7) days following the beginning of employment or the date of this Agreement, whichever is later, and must maintain their membership in good standing in the Union as a condition of continued employment. If the provisions for Union Security clauses are modified by Congress during the terms of this Agreement, this clause will automatically become modified to conform to such changes.

**Section 2.** The Union or its representatives shall not discriminate against a foreman or workers. Maintenance of Union membership shall be evidenced by the current working card which shall indicate the current dues have been paid to the Union.

**Section 3.** All employees covered by this Agreement shall have the privilege of working for whomever they see fit, in accordance with the terms of this Agreement, and the Employer is to be at liberty to employ or discharge whomsoever it sees fit, in accordance with the terms of the agreement.

Employees covered by this Agreement shall not refuse to work with persons who, after seven (7) days' employment, have complied with the Union Security provisions of this Agreement. However, employees covered by this agreement are not required to work with persons who do not comply with the Union Security provisions of this agreement. The parties agree that additional mechanics

secured by the Employer shall be eligible for and shall comply with requirements of Union membership set forth herein.

## ARTICLE V

### General Foreman - Foreman Hiring Schedule

Section 1.   The General Foreman and Foreman shall be the agents of the Employer.  The right to hire and discharge employees, rests with the General Foreman and/or Foreman who are the authorized representatives of the Employer.  If the Union prefers charges against the General Foreman or Foreman as such, they shall file a copy of such charges in accordance with **Article XII.**

Section 2.   When four (4) or more Carpenters are employed, one (1) shall be the Foreman.  The Employer at its sole discretion, may designate a second foreman, who, shall be from the local Union in which jurisdiction the job is located.

Section 3.   When five (5) or more Carpenter Foreman are employed, there will be one (1) General Foreman designated by the Employer.

## ARTICLE VI

### Non-Discrimination Clause

### Job Referral System

The parties agree that there shall be no discrimination in the

employment, hiring or training of employees in the bargaining unit on the basis of race, creed, color, sex, national origin, age, disability, marital status, citizenship status, sexual orientation or affectional preference in all employment decisions, or Union activity as defined in applicable federal, state or local laws. For the purposes of this **Article**, "citizenship status" means the citizenship of any person, or the immigration status of any person lawfully residing in the United States who is not a citizen or national of the United States.

**Section 1.** In selecting applicants from the referral list, the Union shall use the following criteria:

Carpenters will be hired from the job referral list at the District Council. The 50/50 rule will be enforced and no special requests can be made to the Union. The Contractor can hire whom he wants on his 50% ratio. The first Carpenter on the jobsite shall be referred by the Union. The second Carpenter shall be the Employer's selection. The balance shall be 50% from the Union and 50% from the Employer. The Union will cooperate, in order to meet all legal requirements, and furnish qualified Carpenters.

When an Employer requests the job referral list to send members to a job, the job referral list shall cooperate by sending only such as are experienced in the specific type of carpentry work being done on the said job by that Employer.

17

Applicants for referral through the Union must register with the Union. Applicants who have successfully completed the full Apprentice Program shall be presumed to have the necessary skill and experience. Whether other applicants are possessed of the necessary skill shall be determined by the Employer, subject to appeal, pursuant to **Article XII** of this Agreement.

**Section 2.** The Union will cooperate, in order to meet all legal requirements, and furnish qualified Carpenters. A working Job Steward on each shift shall be appointed by the Union. All jobs regardless of what type of agreement they work under shall have a New York District Council of Carpenters certified Shop Steward.

The Shop Steward responsibilities are:

a) Enforce Collective Bargaining Agreement regarding wage & fringe benefit rates.

b) Protect the jurisdiction of the Carpenter.

c) Check the quarterly work cards of the Carpenters, insuring that they are up to date.

d) Be aware that all safety standards of the jobsite are up to par.

e) Enforce 50-50 manning provisions as addressed in the Collective Bargaining Agreement.

f) Blow the whistle at the point of work promptly at 8:00 a.m.

18

and at 12:30 p.m., and that it also be mandatory for him to blow the whistle for the end of work, promptly at 12:00 noon and at 3:30 p.m.

g)    Attempt to settle all disputes on the jobsite. Any dispute that is unresolved will be settled by the Business Agent of that jurisdiction.

All New York City District Council certified Shop Stewards shall be given time to fill out and deliver his or her Shop Steward reports for that work week to the Union hall in the jurisdiction area they are working in and the time must be agreed between the Employer and the Steward. When the Shop Steward has completed his work on behalf of the District Council, he shall perform any work within his trade assigned to him by the Employer. When a signatory Employer wishes to layoff a Shop Steward during a continuous employment, the Employer must notify the Union and have a meeting on the job with the Union within twenty-four (24) hours. If termination takes place, a letter must be sent to the Union.

Section 3.    The apprentice ratio within this Collective Bargaining Agreement shall be two (2) apprentices to every five (5) journeyman and one of those apprentices must be a third or fourth year apprentice referred from the out-of-work list by the District Council.

All apprentices must work a minimum of 50 % of a work week on

19

the tools with journeyman while employed on a regular basis.

Section 4. The Employer shall retain the right to discharge any Carpenter referred by the Union for good cause reasons. If the Employer rejects the Carpenter, the Employer shall notify the Union in writing the reasons for rejection. The Union shall then refer other Carpenters to the Employer until the required number of Carpenters is obtained.

## ARTICLE VII

### Lumping Prohibited

Section 1. The parties hereto agree to the elimination of lumping (the subcontracting of labor without material). The Subcontractor must furnish both labor and material complete under one contract; this also applies to wood flooring, it being agreed, however, that contracting for the installation of antique flooring or the surfacing of old floors shall not be classified as lumping.

Section 2. The Employer, General Contractors, Prime Contractors, Builders, or Subcontractors agree that they will not subcontract any work covered under this Agreement to any one in order to circumvent the payment of wages, fringe benefits, and working conditions provided herein.

## ARTICLE VIII

### Geographical Jurisdiction

This Agreement shall cover work performed by Carpenter employees within the territorial jurisdiction of the District Council of New York City and Vicinity, which is as follows:

All of the five (5) Boroughs of the City of New York, all of the Islands in and all the waters of the adjacent Harbors, Rivers and Bays, and that portion of Long Island bounded by a line beginning at the intersection of the City Line and the North Shore of Long Island, then running southerly to the Southern State Parkway, then East to Seaford Creek in Nassau County, then South to the Atlantic Ocean, then West to the Southern tip of the Borough of Richmond, then North on Arthur Kill to Kill Van Kull, then East to Upper New York Bay, then North to the North River and Hudson River, then East to New York City Line then continue East on the New York City Line to Long Island Sound, then South to the intersection of the City Line and the North Shore of Long Island, all within the State of New York.

## ARTICLE IX

### Joint Venture

**Section 1.** The Employers stipulate that any of its subsidiaries or joint ventures to which they may be party when such

subsidiaries or joint ventures engage in building construction work, shall be bound by the terms of this Agreement.

Section 2. When Employers enters into a joint venture with an Employer who is not bound by this Agreement, then said joint ventures must either be bound through their respective Trade Associations, or it must sign an agreement with the District Council of New York City before it can employ any of its members.

Section 3. This Agreement shall be binding on the Employer, its successors and/or assigns, as well as any firm, be it corporation, partnership or joint venture which the Employer, in which its successors or assigns has or acquires a financial interest.

## ARTICLE X

## Hours - Holidays - Overtime

Section 1. The intent is to maintain the seven hour work day, thirty five hour work week. During the term of this Agreement the work day may be increased to eight hours at straight time pay hours and a forty hour work week with written notification to the District Council prior to commencement of job and must continue for the duration of the job. Union members shall be allowed one-half (½) hour for lunch, exclusive from the seven or eight hour work day. Overtime hours Monday through Friday shall be paid at time

22

and one-half.  Saturday pay shall be at the time and one-half rate. The Contractor is expected to establish and maintain a reasonable work week schedule allowing for unusual jobsite conditions.  Other than an emergency, notice of all overtime work should be given to the Carpenters before noon if possible.  Carpenters will never be penalized for refusing to work overtime.

**Section 2.  Flexible Starting Time**: The normal work day shall start at eight (8) a.m.  and may be changed by the Employer due to work site conditions to start between seven (7) a.m. and nine (9) a.m. for all or a portion of the employees. Notification to the Union will be given by the Contractor when changed from the normal eight (8) a.m. starting time.  No Carpenter is to start work before the designated starting time.

**Section 3. Shift Work**: The Employer may work two shifts with the first shift starting at the established time to the end of the shift at straight time rate of pay.  The second shift will receive one hour at double time rate of pay for the last hour of the shift (eight for seven, nine for eight). In addition, members of the second shift shall be allowed one-half (½) hour to eat, with this time being included in the hours of work established.  There must be a first shift to work the second shift.  All additional hours worked  shall be paid at the time and one-half rate.  The Employer shall notify the Union in advance of beginning the shift schedule.

23

On shift work, the Job Steward shall work no more than one shift. There shall be a Job Steward on each shift who shall be appointed by the Union. There shall be a pre-job conference with the Union before the commencement of any shift work.

Section 4. <u>Off-hour Work on Alteration and Repair Work</u>: When performing alteration or repair work in an occupied building, and when it is not possible to perform said work during regular working hours, said work shall proceed during off hours, as scheduled by the Employer, but starting no later than 8:30 p.m. The work day and the rate of pay shall be the same as the second shift provisions. In addition, members of the off-hour crew shall be allowed one-half (½) hour to eat, with this time being included in the established work day. All additional hours worked in excess of the shift hours shall be paid at the time and one-half rate. The Employer shall notify the Union in advance of beginning said off-hour work, which shall be performed subject to the provisions of this **Section** and subject to notification to the Union. There shall be a pre-job conference with the Union before the commencement of off-hours work.

Section 5. The Employer may start a portion of the crew one hour prior to the established start time at straight time wages due to unusual job site conditions. The Employer will determine the number of employees required. The working Steward will be part of

the early crew.  It is understood this is not intended to establish a continuous staggered work day.

**Section 6.** Saturday Make-up:  When conditions beyond the control of the Employer, such as severe weather, wide spread power failure, fire, natural disaster, etc., prevent the operation of the job on one or more normal working days, the Employer may, with notification to the Union, schedule the Saturday of that calendar week during which work was prevented, as a make-up day at straight time.  All hours worked in excess of the normal work day shall be paid for at the rate of time and one-half.  When a holiday falls on a Saturday, then the make-up day rate shall be time and one-half. In order to utilize a Saturday as a make-up day, the Employer must declare a regular work day "terminated", for one of the reasons listed above, no later than 10:00 a.m. of the day terminated, and must notify the Union of its desire to work a make-up day by noon of the day preceding the make-up day.  Employees employed by the Employer on the day so "terminated", shall have the right of first refusal to work on the make-up Saturday, but said employees shall also have the right to decline work on a make-up Saturday, without any penalty.  If men are needed to work a make-up Saturday, other than those already working on the job, the Employer shall call the Union for men before employing men secured from any other source. A make-up Saturday shall be no less than the seven or eight hours

25

as established by the shift, with one-half (½) hour off to eat, charged to the hours worked.

Section 7. It is further agreed that no work shall be performed on Saturdays, Sundays, or Legal Holidays, except in the case of emergency or necessity, and that no work shall be performed then unless permission is granted by the District Council on the previous workday, stating location of shop or building where work is to be performed and the number of men required. DOUBLE TIME SHALL BE PAID FOR ALL WORK ON SUNDAYS, AND LEGAL HOLIDAYS, except as otherwise noted.

Emergency work, INVOLVING DANGER TO LIFE AND PROPERTY, may be performed without permission from the District Council.

Section 8. The Legal Holidays referred to herein are: New Year's Day, Washington's Birthday, Decoration Day, Independence Day, Labor Day, Columbus Day, Election Day (only in Presidential Year), Thanksgiving Day, day after Thanksgiving and Christmas Day. These are to be non-paid Holidays except for the General Foreman, Foreman and First and Second Year Apprentices who shall be paid on a weekly basis INCLUDING HOLIDAYS.

Section 9. In all cases, the Holidays referred to in the previous Section shall be observed on the day and date established for the State of New York. When work is performed on such Legal Holidays, double time shall be paid.

**Section 10.** Employees employed on the last legal working day before Christmas Day and before New Year's Day and who report to work on such days, shall receive three (3) hours' afternoon pay without working. Work performed on the afternoons of said days shall be paid at the double-time rate only. Fringe Benefit Contributions will be payable on the half-holidays referred to above.

**Section 11.** When a Legal Holiday, defined in **Section 8**, falls on a Sunday and the following day is declared a Legal Holiday, then double-time shall be paid for all hours worked, if and when the Union grants permission.

**Section 12.** No work shall be performed on Labor Day.

## ARTICLE XI

### Wages

**Section 1.** The Employer agrees that it will hire all employees covered by this Agreement for wages and hours not less than those specified herein.

**Section 2.** Wages shall be paid weekly on the job before 3:30 p.m. or 4:00 p.m. on Friday, said wages to be paid at the Employer's option either in cash in envelopes, upon the outside of which shall be plainly marked the Employer's name, the persons name and number, Social Security number, the hours worked, and the

27

amount of money enclosed, or by check, provided:

(a)   The check is a Todd Insured A.B.C. System Payroll check, or similar type of check, containing above information as on the pay envelope, and that delivery of the checks to the person shall be made at least on the day preceding a banking day.

(b)   Any deductions from wages now or hereafter required by law shall also be marked on the face of pay envelopes.   If Carpenters are not paid as specified above, double-time shall be paid for Friday between the hours of 3:30 p.m. or 4:00 p.m. and 5:30 p.m. or 6:00 p.m., and single-time for working time thereafter, until paid, not exceeding fourteen (14) hours; provided, however, that the men report to and remain on the job during the said fourteen (14) hours.

Section 3.   Employees covered by this Agreement shall be given one (1) hour's notice before being discharged or laid off, and in either event his or her wages and benefits must be paid in full at that time.

Employees covered shall not be penalized for the one hour discharge notice.   The wages shall be paid in cash or by insured check, under the conditions set forth in Section 2 of this Article. This does not apply to any temporary suspension of work during any pay week of reasons beyond the control of Employer.

All employees, at the termination of their employment, shall

28

receive the New York State Record of Employment Form 1-A within twenty-four (24) hours of their dismissal.

**Section 4.**   When the Employer is working under conditions in **Article X, Section 1, 2, and 3,** then the payment of wages shall conform to this **Article XI, Section 1, 2(a) and (b) and Section 3,** except that the hours indicated will change accordingly.

**Section 5.**   This Agreement is based on the principle that the Employer is entitled to a day's work for a day's pay. Any unreasonable failure to work these hours gives the Employer the right to pay only for the hours actually worked, subject to grievance as set forth in **Article XII.**

**Section 6.**   Except at the start and finish of a job, General Foreman, Foreman, and First and Second Year Apprentices shall be employed on a weekly basis which shall include wages and fringe benefits FOR HOLIDAYS.   The payment of overtime rates for the General Foreman and Foreman shall be made at the minimum book rate for General Foreman and Foreman when there are Carpenters doing work on the jobsite.

If the General Foreman and Foreman are receiving a rate higher than the minimum book rate, it will be the Employer's option as to whether the General Foreman and Foreman shall receive the higher agreed rate for said overtime.

**Section 7.**   When employees are referred to a job and report

29

for work, and no work is provided, they shall receive two (2) hours' pay, except for inclement weather or other conditions beyond the control of the Employer. All employees reporting for work and ready to start at the designated start time, shall receive two (2) hours' show-up time, if the job does not start, except for inclement weather or other conditions beyond the control of the Employer.

Section 8. **Wages - Wage rates and fringe benefit contribution within the bargaining unit shall be determined and/or reallocate by Union at its sole discretion:**

**TOTAL WAGES & FRINGE BENEFITS - JOURNEYMAN CARPENTER**

|  | 07/01/01 | 01/01/02 | 07/01/02 | 01/01/03 |
|---|---|---|---|---|
| Total package per hr. | $57.48 | $58.89 | $60.58 | $62.27 |

|  | 07/01/03 | 07/01/04 | 07/01/05 |
|---|---|---|---|
| Total package per hr. | $65.09 | $67.91 | $70.87 |

**FOREMAN -**          $3.00 PER HR. ABOVE JOURNEYMAN SCALE
**GENERAL FOREMAN -**  $6.00 PER HR. ABOVE JOURNEYMAN SCALE

| EFFECTIVE DATES WAGE RATE PER HOUR | 07/01/01 | 01/01/02 | 07/01/02 | 01/01/03 |
|---|---|---|---|---|
| Journeyman | $33.68 | 35.09 | 35.67 | ----- |
| Foreman | $36.68 | 38.09 | 38.67 | ----- |
| General Foreman | $39.68 | 41.09 | 41.67 | ----- |

| EFFECTIVE DATES WAGE RATE PER HOUR | 07/01/03 | 07/01/04 | 07/01/05 |
|---|---|---|---|
| Journeyman | $---- | ----- | ----- |
| Foreman | $---- | ----- | ----- |
| General Foreman | $---- | ----- | ----- |

30

## APPRENTICES

Apprentice wage increases may be deferred for reasons determined by the Joint Apprentice Committee and or it's Training Director by written notice to the Employer.

| EFFECTIVE DATES<br>WAGE RATE PER HOUR | 07/01/01 | 01/01/02 | 07/01/02 | 01/01/03 |
|---|---|---|---|---|
| 1st yr. Apprentice 40% | $13.47 | 14.04 | 14.27 | ----- |
| 2nd yr. Apprentice 50% | $16.84 | 17.55 | 17.84 | ----- |
| 3rd yr. Apprentice 65% | $21.89 | 22.81 | 23.19 | ----- |
| 4th yr. Apprentice 80% | $26.94 | 28.07 | 28.54 | ----- |

| EFFECTIVE DATES<br>WAGE RATE PER HOUR | 07/01/03 | 07/01/04 | 07/01/05 |
|---|---|---|---|
| 1st yr. Apprentice 40% | $----- | ----- | ----- |
| 2nd yr. Apprentice 50% | $----- | ----- | ----- |
| 3rd yr. Apprentice 65% | $----- | ----- | ----- |
| 4th yr. Apprentice 80% | $----- | ----- | ----- |

## FRINGE BENEFIT RATE PER HOUR
## JOURNEYMAN-FOREMAN-GENERAL FOREMAN

| EFFECTIVE DATES | 07/01/01 | 01/01/02 | 07/01/02 | 01/01/03 |
|---|---|---|---|---|
| WELFARE | $ 8.80 | 8.80 | 8.80 | ----- |
| PENSION | $ 5.41 | 5.41 | 5.91 | ----- |
| ANNUITY | $ 4.70 | 4.70 | 5.20 | ----- |
| A.J.R.E.I.F. | $ 0.29 | 0.29 | 0.35 | ----- |
| VACATION | $ 4.40 | 4.40 | 4.40 | ----- |
| SUPPLEMENTAL FUNDS | $ 0.04 | 0.04 | 0.04 | ----- |
| U.B.C. & J.A. INT'L | $ 0.06 | 0.06 | 0.06 | ----- |
| N.Y.D.C.C. LABORS/MGT. | $ 0.10 | 0.10 | 0.15 | ----- |
| TOTAL PER HOUR | $23.80 | 23.80 | 24.91 | ----- |

31

| EFFECTIVE DATES | 07/01/03 | 07/01/04 | 07/01/05 |
|---|---|---|---|
| WELFARE | $----- | ----- | ----- |
| PENSION | $----- | ----- | ----- |
| ANNUITY | $----- | ----- | ----- |
| A.J.R.E.I.F. | $----- | ----- | ----- |
| VACATION | $----- | ----- | ----- |
| SUPPLEMENTAL FUNDS | $----- | ----- | ----- |
| U.B.C. & J.A. INT'L | $----- | ----- | ----- |
| N.Y.D.C.C. LABORS/MGT. | $----- | ----- | ----- |
| TOTAL PER HOUR | $----- | ----- | ----- |

FRINGE BENEFIT RATE PER HOUR
1st 2nd 3rd & 4th YEAR APPRENTICES

| EFFECTIVE DATES | 07/01/01 | 01/01/02 | 07/01/02 | 01/01/03 |
|---|---|---|---|---|
| WELFARE | $ 8.80 | 8.80 | 8.80 | ----- |
| PENSION | $ 2.71 | 2.71 | 2.96 | ----- |
| ANNUITY | $ 2.35 | 2.35 | 2.60 | ----- |
| A.J.R.E.I.F. | $ 0.29 | 0.29 | 0.35 | ----- |
| VACATION | $ 2.20 | 2.20 | 2.20 | ----- |
| SUPPLEMENTAL FUNDS | $ 0.04 | 0.04 | 0.04 | ----- |
| U.B.C. & J.A. INT'L | $ 0.06 | 0.06 | 0.06 | ----- |
| N.Y.D.C.C. LABORS/MGT. | $ 0.10 | 0.10 | 0.15 | ----- |
| TOTAL PER HOUR | $16.55 | 16.55 | 17.16 | ----- |

| EFFECTIVE DATES | 07/01/03 | 07/01/04 | 07/01/05 |
|---|---|---|---|
| WELFARE | $----- | ----- | ----- |
| PENSION | $----- | ----- | ----- |
| ANNUITY | $----- | ----- | ----- |
| A.J.R.E.I.F. | $----- | ----- | ----- |
| VACATION | $----- | ----- | ----- |
| SUPPLEMENTAL FUNDS | $----- | ----- | ----- |
| U.B.C. & J.A. INT'L | $----- | ----- | ----- |
| N.Y.D.C.C. LABORS/MGT. | $----- | ----- | ----- |
| TOTAL PER HOUR | $----- | ----- | ----- |

The Pension, Vacation and Annuity Fund contribution rates for Apprentices are based upon 50% of the Journeyman rate.

Section 9.  When an employee is required to work through the

32

lunch period, he shall be compensated at the rate of time and one-half, and be given time to eat his lunch.

Section 10.  There shall be no lost time in wages to any employee on the day of injury when immediate medical attention is required to said employee, while working on the Employer's job, provided the employee submits a note from the doctor or clinic, stating that the employee cannot work that day.

## ARTICLE XII

### Grievance Procedure

Section 1.  All complaints, disputes and differences concerning the application, interpretation, effect, purpose or breach of any term or condition of this Agreement, or in the event there shall exist any claim, demand, dispute or controversy between the parties hereto, excluding the merits of jurisdictional dispute, i.e., a dispute with another trade over the assignment of work, the parties hereto shall first attempt to settle and adjust such dispute, claim, demand or controversy by negotiation

Section 2.  Any grievance not resolved shall be submitted to arbitration before Roger Maher, Robert Silagi, Joseph W. Lipowski or Robert Herzog who shall serve as the permanent contract arbitrator(s) hereunder.  The arbitrator shall conduct a hearing in such a manner as he shall consider proper and shall serve as sole

arbitrator of the dispute between the parties.  The arbitrator shall have the right to conduct an ex parte hearing in the event of the failure of either party to be present at the time and place designated for the arbitration, and shall have the power to render a decision based on the testimony before him at such hearing.  The decision of the arbitrator shall be final and binding upon both parties and may be entered as a final decree or judgement in the Supreme Court of the State of New York or in a court of appropriate jurisdiction in any state where such decision shall be rendered. The costs of the arbitration, including the arbitrator's fee shall be borne equally by the Employer and the Union.  It is the intent of the parties hereto that all disputes between them, both within and outside of the Agreement, shall be submitted to arbitration and that no defense to prevent the holding of the arbitration shall be permitted.  Service of any documents or notice referred to above, or service of any notice required by law in connection with arbitration proceedings may be made by registered or certified mail. A post office receipt shall be conclusive evidence of proper service if mailed to the address designated by the Employer when it signed the agreement.  If certified or registered mail is refused or not picked up, ordinary mail shall be deemed sufficient service provided that it is forwarded to the address of record contained in this agreement.

**Section 3.** Upon the confirmation of the arbitrator's award, the prevailing party shall, or on any appeal therefrom, be entitled to receive all court costs in each proceeding as well as reasonable counsel fees.

## ARTICLE XIII

### No Strike - No Lockout

The Union or its representatives shall not order a strike or stoppage of work, nor shall the employees strike against any Employer, or collectively leave the work of an Employer, for any reason including jurisdictional dispute, nor shall any Employer lock out employees prior to filing a complaint, or pending the adjustment of any existing disputes, as provided for in **Article XII.**

The Union may call or sanction a strike for:

    (1)   the Employer's refusal to submit a matter to arbitration, pursuant to the arbitration clause of this Agreement,

    (2)   the Employer's failure to comply with any decision of any Board of Arbitration established hereunder within five (5) working days after such decision, and

    (3)   any other reason explicitly provided for in this

35

agreement.

## ARTICLE XIV

### Validity

If the Courts should decide that any clause or part of this Agreement is unconstitutional or illegal, or should any clause or part of this Agreement be found contrary to present or future laws, it shall not invalidate the other portions of this Agreement, it being the sole intent and purpose of this Agreement to promote peace and harmony in the craft.

## ARTICLE XV

### Fringe Benefit Funds

**Section 1.** Every Employer covered by this Agreement shall make contributions for each hour worked of all employees covered by this Agreement and employed by said Employer within the territory of this Agreement in the amounts hereinafter specified to the Welfare Fund, Pension Fund, Vacation Fund, Annuity Fund, New York City and Vicinity Labor Management Cooperation Fund, United Brotherhood of Carpenters and Joiners of America Fund, Apprenticeship Journeymen Retraining Educational and Industry Fund and Supplemental Funds. Except as provided in **Article X**, full benefits shall be paid for Foreman, General Foreman, First and

36

Second year apprentice.

Each signatory Employer shall make available to the Trustees of the various Fringe Benefit Trust Funds, or their designated auditing representative, all pertinent books and records, including all cash disbursement records, required for an audit, to enable a said auditor to ascertain and to verify, independently, that the proper contributions hereunder have been paid and such records will be produced whenever deemed necessary by the Trustees in connection with the proper administration of their fiduciary responsibilities. In order to accomplish this end, it is specifically agreed that should any affiliate or subsidiary Contractor, as described in **Article XVII Section 19** of this Agreement be involved with the business activities of this Employer that this Employer will make available all the pertinent books and payroll records of such affiliate or subsidiary to the auditor so that a complete audit can be conducted. The extent of the audit, and the determination as to what pertinent records are necessary to complete the audit, is in the sole discretion of the Employer/Union Trustees, so that they may independently verify that all required contributions have been made and discover the identity of all beneficiaries under the plans for which they have been entrusted, for proper administration.

When auditors are sent to audit the books of any Employer, General Contractor, Prime Contractor, Builder or Subcontractor and

a definite appointment is scheduled, when the auditor or auditors cannot start at the appointed time and date and must return, or when valid payroll records are not furnished, then the said Employer, General Contractor, Prime Contractor, Builder or Subcontractor shall be penalized and pay the sum of $100.00 per auditor, to cover the expense of the auditor or auditors. Same to be included in Trust Agreements of all District Council Funds.

It shall be a violation of this Agreement for any Employer, General Contractor, Prime Contractor, Owner-Builder, or Subcontractor, bound by this Agreement, to fail to furnish proper records when requested, for the purpose of completing an audit. The Union shall have the right to remove all its members from the offending Contractor upon twenty-four (24) hours' notice. If such members who are removed remain on the jobsite during regular working hours, they shall be paid for lost time not to exceed three (3) working days' pay.

**Section 2.** Contributions to the New York City District Council of Carpenters Welfare Fund, Pension Fund, Vacation Fund, Annuity Fund, New York City and Vicinity Labor Management Cooperation Fund, United Brotherhood of Carpenters and Joiners of America Fund, Apprenticeship Journeymen Retraining Educational and Industry Fund, and Supplemental Funds shall be in accord with this Agreement. The contribution to the Supplemental Funds shall be

38

allocated in the following manner:

Carpenters Relief and Charity Fund
TWO AND ONE-HALF CENT($0.025) PER HOUR

District Council Scholarship Fund
ONE AND ONE-HALF CENT ($0.015) PER HOUR

The purpose of the Carpenters Relief and Charity Funds is to enable the parties to make charitable donations in the name of the carpentry industry from time to time. Said donations shall be made to duly recognized tax exempt institutions within the meaning of the Internal Revenue Code and to provide emergency assistance to bona fide victims of disaster, catastrophe and community projects for the good of the general public. The contributions shall be included in the payment of the Fringe Benefit Stamp. The Fund shall be administered by a minimum of two persons, one designated by the Union and the other by the Employer Associations. They shall serve without pay and shall be bonded to the extent required by law. All monies received by the Fund shall be deposited in a bank selected by the two administrators and shall be disbursed only by check signed by both administrators. At least once a year the entire balance of the Fund on hand shall be disbursed to organizations and persons who meet the qualifications set forth above. The administrators shall keep such books or records as may be necessary. Once a year the administrators shall account for all monies received and disbursed.

The Supplemental Funds shall be established in accordance with applicable law, and any employee's authorization that is required shall be secured by the Union.

It is agreed that all contributions are due and payable to the District Council Fund Office as called for in this Agreement for the other fringe benefit funds and the Employer does hereby authorize said area Fund Office to forward said contributions to other Fund Office in such manner as the Trustees of said fund shall reasonably require.

By the execution of this Agreement the parties authorize the representatives of the participating Employers and Carpenter Unions to designate their respective Union and Employer Trustees hereby waiving all notice thereof and ratifying all actions taken by them within the scope of their authority.

If any of the above allocations are determined to be, in the opinion of Counsel legally improper, then in that event said allocation may be re-allocated by the Union to a presently existing fringe benefit fund, or to another fund to be established by the Union and the Employer.

The parties to this Agreement recognize the New York City and Vicinity of Carpenters Joint Labor Management Cooperation Trust Fund. The Committee will be funded by contributions paid through the Trust Funds Stamp Plan. Said donations shall be made in

40

accordance with all applicable Federal and State Laws pertaining thereto.

The parties to this Agreement agree the Employer shall make contributions of two ($0.02) cents per hour worked for each employee covered by this Agreement to the Apprenticeship & Training Fund of North America (the "training fund"). Two ($0.02) cents per hour for each employee to the Carpenters Health & Safety Fund of North America (the "Health & Safety Fund"). Two ($0.02) cents per hour for each employee to the Labor-Management Education and Development Fund. The Employer hereby agrees to be bound by the trust indenture agreement applicable to the United Brotherhood Carpenters National Health & Safety, Apprenticeship and Training, and Education and Development Funds as they exist and as they may be amended or restated, and to such rules, regulations and other governing documents adopted pursuant to such trusts.

The Employer and the Union acknowledge that they are represented by their duly designated Trustees to administer the various Fringe Benefit Trust Funds provided for in this contract. Because of the various liabilities and responsibilities placed upon all parties to this Agreement, including all Contractors and Union representatives and their respectively designated Trustees, each Contractor hereby agrees that the Fringe Benefit Fund Trustees shall have the necessary powers to fulfill their fiduciary

41

obligations in order to fully protect each Employer signed to this Agreement and their employee-beneficiaries under the respective fund plans.

**Section 3.**  Each Employer shall be bound by all of the terms and conditions of the Agreements and Declarations of Trust, creating the Welfare Fund, Pension Fund, Vacation Fund, Annuity Fund, New York City and Vic. Labor Management Cooperation Fund, United Brotherhood of Carpenters and Joiners of America Fund, Apprenticeship Journeymen Retraining Educational and Industry Fund, and Supplemental Funds, as amended, and by all By-Laws adopted to regulate each of said Funds.  The Trustees of the Funds shall secure the approval of the Treasury Department under the applicable provisions of the Internal Revenue Code and shall amend the same, if necessary, to secure such approval, so as to qualify the Employer-contributions as deductions for Federal Income Tax purposes.

**Section 4.**  It is agreed that no contributions to any of the Funds as specified in this **Article** shall be required on the premium portion of wages.  For the purposes of these **Sections** only, all hours worked shall be regarded as straight-time hours.

It is further agreed, however, that contributions specified in this **Article** shall be paid on the hours represented by wages received for not working on the afternoon of the days specified in

42

**Article X, Section 10.**

Fringe benefit contributions, including Vacation Fund payments, will be the same for the General Foreman, Foreman and Journeyman. Fringe benefit contributions for Apprentices shall be in accordance with applicable schedules in **Article XI**.

In the case of Foreman, General Foreman and First and Second year Apprentices contributions shall be made to the fringe benefit funds on the basis of hours for which said employee is actually paid, regardless of whether said hours are actually worked. This provision shall not apply to bonuses, paid vacation or paid sick leave, voluntarily paid to said employees.

**Section 5.** Whenever the Employer is in default in payments to the Funds referred to in **Article XV** of the Agreement, and reasonable notice of such default is given to the Employer, if the payments are not made, the Union may remove its members from the work of such Employer. If such men who are removed remain at the jobsite during regular working hours, they shall be paid for lost time not to exceed three (3) days' pay.

**Section 6.** (a) In the event that formal proceedings are instituted before a court of competent jurisdiction by the trustees of a Benefit Fund or Funds to collect delinquent contributions to such Fund(s), and if such court renders a judgment in favor of such Fund(s), the Employer shall pay to such Fund(s), in accordance with

43

the judgement of the court, and in lieu of any other liquidated damages, costs, attorney's fees and/or interest, the following:

    (1) the unpaid contributions; plus

    (2) interest on the unpaid contributions determined at the prime rate of Citibank plus 2%; plus

    (3) an amount equal to the greater of --

        (a) the amount of the interest charges on the unpaid contributions as determined in above, or

        (b) liquidated damages of 20% of the amount of the unpaid contributions; plus

    (4) reasonable attorney's fees and costs of the action; and

    (5) such other legal or equitable relief as the court deems appropriate.

    (b) In the event that proceedings are instituted before an arbitrator under **Section 7** of this **Article** to collect delinquent contributions to Benefit Fund or Funds, and if such arbitrator renders an award in favor of such Fund(s), the arbitrator shall be empowered to award such interest, liquidated damages, and/or costs as may be applicable under the Agreement and Declaration of Trust establishing such Fund(s).

    **Section 7.** Should any dispute or disagreement arise between

44

the parties hereto, or between the Union and any Employer - member signatory hereto, concerning any claim arising from payments to the Fund of principal and/or interest which is allegedly due, either party may seek arbitration of the dispute before the impartial arbitrator designated hereunder by filing a notice of intent to arbitrate in writing with said impartial arbitrator, and serving a copy of said notice on the Employer, or the Union, as the case may be.  Unless a waiver is mutually agreed to in writing by the parties hereto, a hearing shall be convened as soon as practicable, and the arbitrator shall submit his award within twenty (20) days after the close of the hearing.  The arbitrator shall have full and complete authority to decide any and all issues raised by the submission and to fashion an appropriate remedy including, but not limited to, monetary damages.  The arbitrator's award in this regard shall be final and binding upon the parties hereto and the individual Employer, if any, and shall be wholly enforceable in any court of competent jurisdiction.  The cost of the arbitration, including the fees to be paid to the arbitrator shall be included in the award and shall be borne by the losing party.

Roger Maher, Robert Silagi, Joseph W. Lipowski, or Robert Herzog is hereby designated as impartial arbitrator(s) hereunder.

The agreement of the parties to submit said matters regarding the payment of contributions to an arbitrator does not excuse the

Employer from any statutory, civil or criminal liability which may attach to his actions under Municipal, State or Federal law. The submission of a matter to arbitration is in no way meant to affect the right of the Union to remove its members from an Employer's premises, as provided for in this Agreement.

Section 8. A stamp plan has been established which provides for the payment of contributions to the Welfare Fund, Pension Fund, Vacation Fund, Annuity Fund, New York City and Vic. Labor Management Cooperation Fund, United Brotherhood of Carpenters and Joiners of America Fund, Apprenticeship Journeymen Retraining Educational and Industry Fund, and Supplemental Funds pursuant to a consolidated stamp, including the filing of the monthly summary report with the Fund office. The Employer will comply with procedures established by the Benefit Fund Trustees to assure that the employee receives the consolidated stamp together with his/her pay. The stamps shall be purchased through facilities established by the Bank of New York or such other agencies authorized by the Trustees.

## ARTICLE XVI

## Surety Bond

Section 1

An Employer is required to post a bond as set forth in **Article XVI**,

**Section 5** of this agreement to guarantee payment of contributions to the Funds as provided for in **Article XV.**

**Section 2**    Employer's Acknowledgment of Prompt Payments to the Funds

The Employer further acknowledges and the parties agree that prompt payment of fringe benefit contributions is essential to the proper administration of the Agreement, the appropriate funding and actuarial soundness of the Funds and the timely payment of benefits to participating employees. The Employer agrees to comply with the Funds' Collection Procedures, as may be adopted by the Board of Trustees, including responding to information and other requests on a timely basis, promptly including but not limited to permitting and cooperating with an audit. When a signatory Employer owes to the Benefit Funds an amount greater than the face amount of its bond, the bond must be increased to cover such indebtedness. An Employer determined to be delinquent shall be required to make weekly cash payments to the Funds by certified check to cover on-going contribution obligations. If this is not done, the Union at its discretion may remove all of its members from the employ of that Employer.

**Section 3**    Job Action for Non-Complying Employer

The Employer agrees to provide a bond in such amounts as provided for here in **Article XVI** relating to Bonding before commencing any

47

work.  In the event that the Employer fails to provide such bond within seven (7) days of commencing work, the District Council may consider the Employer in default and remove its members, upon reasonable notice, from each of the Employer's job sites.  If the members remain on the site, they shall each receive no more than three (3) days of wages and fringe benefit contributions during such job action.

**Section 4**  Personal Liability of Shareholders, Officers, Other Individuals

(A)  In the event that the Employer fails for any reason to satisfy the Bonding requirement provided for here in **Article XVI**, the Employer agrees that its shareholders, officers, and individuals who are empowered to execute agreements, sign checks and pay fringe benefit contributions shall be personally liable, jointly and severally, for all unpaid amounts due and owing to the Funds, including but not limited to interest, liquidated damages, auditors' costs, attorneys' fees and costs to collect the same.

(B)  No Limitations

This **Section** shall in no way relieve or excuse any Employer of the obligation to provide the required Bond regardless of the business form under which the Employer does business, nor shall this provision limit the personal liability of any corporate officers or shareholders based on operation of law.

48

(C)   Application to Non-Complying Employer

Any Employer commencing work in violation of this **Section** shall be in violation of **Article XV** relating to the Funds.

**Section 5**   Bond Amount

The Funds' Trustees shall determine the amount of Bond the Employer is required to provide, but such amount shall be no less than an amount equal to sixty days of estimated contributions.

The Employer shall provide a Bond in the minimum amounts as follows:

| Number of Employees | Bond Amount |
| --- | --- |
| 1-3 | $ 10,000.00 |
| 4-7 | $ 15,000.00 |
| 8-15 | $ 20,000.00 |
| 16-20 | $ 30,000.00 |
| 21-25 | $ 75,000.00 |
| 26 or more | $125,000.00 |

The Funds may seize the bond if the Funds determine that the Employer has failed to make required contributions to the Funds or if the Employer has violated the Funds' Collection Procedures.  The amount of the bond shall be subject to increase or decrease, in the discretion of the Trustees, depending on the number of employees employed on a particular job site or period.

## ARTICLE XVII

## Miscellaneous Conditions

**Section 1.**   Where an employment office is not maintained on

49

the job, the General Foreman, Foreman or the Employer's Representative shall be conveniently accessible to applicants at least once a day.

Section 2. When the Employer, parties to this Agreement, does any work outside the territory covered by it, they shall conform to the wages and other terms of employment that exist between the Employers and employees of such locality. Such local wages, however, shall not apply to men hired in the territory covered by this Agreement, to work in territory not covered by it.

Section 3. If the Employer fails to comply with the foregoing, they shall receive no support from the Union; provided, however, that no Carpenter shall be removed from jobs in the territory covered by this Agreement pending resolutions of the matter in accordance with **Article XII**.

Section 4. The amount or character of work demanded by the Employer or his Representatives shall not be unreasonable, nor shall it be restricted by the Union, its Representatives, Officers, or members.

Section 5. There shall be no restriction against the use of any machine-made flooring or machine cut timber or lumber.

Section 6. There shall be no restriction of the use of machinery, tools, appliances, or methods. No powder-actuated tools shall be used unless approved by the State Board of Standards and

Appeals.

**Section 7.** The use of safety equipment and appliances furnished by the Employer is mandatory, and the failure to employ the use of such equipment and appliances, after due warning, is sufficient cause for dismissal. The Employer agrees in all respects to comply with the requirements of the Occupational Safety and Health Act and all regulations issued pursuant thereto.

**Section 8.** The consumption of intoxicating beverages or use of drugs on a jobsite is prohibited. Violation of this rule, after due warning, is sufficient reason for dismissal.

**Section 9.** Neither party, during the life of this Agreement, is to adopt any By-Law or attempt to enforce against the other party any working rule or regulation which is contrary to any of the clauses in this Agreement. Neither party shall attempt to enforce against the other party any working rules which have not been approved by the Union.

**Section 10.** The Employers, or the Agents of the Employer shall not accept or give directly or indirectly, any rebate on wages, or give or accept gratuities or give anything of value or extend any favor to any person for the purposes of affecting any rate of wages.

For violation of the foregoing, a penalty must be imposed. In the case of violation by a Union Member, the penalty shall be imposed by the District Council.

51

**Section 11.** Should the parties hereto be unable to agree on the interpretation of any **Section** of this Agreement, the questions shall be settled as provided for in **Articles XII** and **XV**.

**Section 12.** The parties to this Agreement shall continue to use all efforts to maintain an effective Apprenticeship Training Plan and/or system which will insure an adequate force of skilled mechanics. This system shall definitely determine the ratio of apprentices to mechanics working on a specific job that must be employed; wages to be paid during training; method of indenture to the industry and other rules for efficiently operating the plan. Wages and fringe benefits to be paid to such apprentices shall be as indicated in **Article XI**.

**Section 13.** Every signatory Employer party to this contract shall notify the District Council on its specified form, by fax, certified mail, or telephone, of the awarding of any contract on which any of the work described in **Article II** hereof shall be performed by said Employer or a Subcontractor. Said notice shall include the location of the job, the name and address of the Contractor or Subcontractor involved, and the identity of the General Contractor. The District Council shall then provide the Employer with a specified job identification number for that specific job. This identification number will be utilized for the District Council job referral list, Steward's reports, and

summary/remittance reports.   In addition, the Foreman, General Foreman and/or the first employee is required to report his/her presence on said jobsite and obtain this identification number.

Failure to comply with this **Section,** shall be a breach of this Agreement and shall authorize the Union to remove its members from any job on which said Contractor or Subcontractor has not complied with this notice.   The aforesaid notice shall be given within thirty (30) days of the award of a contract, and in any event, prior to the commencement of work, or after the cessation of work, prior to the recommencement thereof.   It is understood that the provisions of this **Section** will be strictly enforced by the Employer, as set forth above, a pre-job conference will be held, if one is requested by the Union.   The Employer shall fax a notice of job closure to the District Council to signify the completion of the job.

Section 14.   It is further agreed that if any Employer engages in any class of work not embodied in Building Construction, both parties shall comply with all the Union conditions then existing in that class of work.

Section 15.   All work covered by this Agreement shall be contracted or subcontracted only to an Employer who is signatory to or agrees to become signatory to a Collective Bargaining Agreement with the Union.   The parties hereto mutually agree with respect to work falling within the scope of this Agreement that is to be

done at the site of construction, alteration, maintenance, or repair of any building, structure, or other works, that if the Contractor should contract or subcontract any aforesaid works falling within the trade jurisdiction of the Union as set forth herein, said Contractor shall contract or subcontract such only to firms which observe the standards of wages and fringe benefits and working conditions established herein to insure the observance of the wages, benefits, hours, and other items and conditions of employment provided herein.

Section 16.    Once an award is made by a General Contractor, Prime Contractor, or Builder to a Subcontractor, who performs only one type of work, then this Subcontractor cannot re-subcontract to another Subcontractor who performs the same type of work.  This does not apply to recognized specialties.

Section 17.    Where for the benefit of the Employer, an employee must cross a body of water in order to reach the jobsite and there is no public transportation available to said site, then it shall be the duty of the Employer to provide adequate safety and comfort for the employee's transportation.  The Employer shall protect such employee under a policy of public liability insurance or any other insurance required by law for any public conveyance.  Such certificate shall be posted in a conspicuous place, on any conveyance used by the Employer.  Should such transportation,

54

whether private or public, require extraordinary fare, such fare shall be paid by the Employer. The employee shall not leave the shore opposite the jobsite earlier than 8:00 a.m. and shall be to the same shore not later than 3:30 a.m., (eight hour day 4:30 p.m.) or if engaged in heavy construction, no later than 4:30 p.m.

**Section 18.**    The Employer agrees that if it performs any service or work described in the Trade Agreements of the District Council of Carpenters within New York State within the geographic jurisdiction of the District Councils, it shall be bound by all the terms and conditions of the Trade Agreement applicable to the location where said service or work is being performed for the period of time that said service or work is being performed in said location, in the same manner as if it were a direct signatory to the applicable Trade Agreement.

**Section 19.** (a)    In order to protect and preserve, for the employees covered by this Agreement, all work heretofore performed by them, and in order to prevent any device or subterfuge to avoid the protection and preservation of such work, it is hereby agreed as follows:  If and when the Employer shall perform any work of the type covered by this Agreement, under its own name or under the name of another, as a corporation, company, partnership, or any other business entity, including a joint venture, wherein the Employer exercises either directly or indirectly any significant degree of

55

ownership management or control, (i.e. through family members) the terms and conditions of this Agreement including Fringe Benefits shall be applicable to all such work.

(b)  All charges of violations of **Paragraph (a)** of this **Section** shall be considered as a dispute under this Agreement and shall be processed in accordance with the procedures for the handling of grievances and the final binding resolution of disputes, as provided in **Article XII**, of this Agreement.  As a remedy for violations of this **Section**, the arbitrator (or arbitration body) provided for in **Article XII**, is empowered at the request of the Union, to require an Employer to:

(1)  pay to affected employees covered by this Agreement, including registered applicants for employment, the equivalent of wages lost by such employees as a result of the violations and,

(2)  pay into the affected joint trust funds established under this Agreement any delinquent contributions together with interest, penalty and liquidated damages to such funds which have resulted from the violations.

Provisions for this remedy herein does not make such remedy the exclusive remedy available to the Union or the Trust Fund for violation of this **Section**; nor does it make same or other remedies

unavailable to the Union or the Trust Fund for violations of other Sections or Articles of this Agreement.

(c)    If, as a result of violations of this Section, it is necessary for the Union and/or the Trustees of the joint trust funds to institute court action to enforce an award rendered in accordance with Subsection (b) above, or to defend an action which seeks to vacate such award, the Employer shall pay any accountants' and attorneys' fees incurred by the Union and/or fund trustees, plus costs of litigation, which have resulted from the bringing of such court action.

Section 20.    The Employer reserves and retains the sole and exclusive rights to manage its operations and to direct the work force except only to the extent the express provisions of this Agreement specifically limit or qualify these rights.

Section 21.    On every job the Employer shall provide a suitable locker.    In buildings over six stories high, a locker is to be provided on every fifth floor.    The locker shall have the door hinged in such a way that hinges cannot be taken off while the door is closed without breaking the door.    The lock must be a mortise lock or hasp and staple bolted through a door, or a safety hasp which covers all screws; in any case, it must be impossible to open the door without breaking it or the lock.

The Employer shall furnish a suitable tool shanty on every

57

fifth floor on all jobs over ten (10) floors in height.

Section 22.    The Employers who have complied with the above requirements are only responsible for loss of tools and clothing due to the burning or forcible entry of the locker and such liability shall be limited to a sum not to exceed:

| | |
|---|---|
| Tools................. | $600.00 (finish) |
| | $500.00 (concrete) |
| Overcoat.............. | $150.00 |
| Other Clothing........ | $150.00 |
| Shoes................. | $125.00 |

upon submission of proper proof of loss.    Proof of loss must be filed within forty-eight (48) hours of the actual loss and payment of the above described claim must be made within fourteen (14) working days of receipt of the proof of loss.    Any disputed claims shall be resolved pursuant to **Article XII** hereof.

Section 23.    Employees' tools which become dulled on the job shall be reconditioned at the expense of the Employer by the employee covered under this Agreement.

Section 24.    All Employers will make sure that any products they ask Carpenters to handle will have a United Brotherhood of Carpenters stamp on it as long as it is within their power to do so.

Section 25.    All Carpenters will be given time to wrap up their tools and wash up before lunch and quitting time.

Section 26.    There will be no quotas imposed on Carpenters working on a jobsite.

58

Section 27.    Any Employer found guilty of offering cash to Carpenters for hours worked shall pay a fine of five thousand ($5,000.00) dollars to the Carpenter's Relief and Charity Fund after he has paid monies that were due to the Benefit Funds.    This will be decided through the Collective Bargaining Agreement grievance and arbitration clause.

Section 28.    In order to protect and preserve for the employees engaged in the manufacturing of custom fixture and mill cabinet products used in the trade, and in order to prevent and device or subterfuge to avoid the protection and preservation of such work, it is hereby agreed that all custom manufactured mill cabinet and architectural woodwork products which are specified and required in the Employers contract with the client, including doors specifically designed as matching components of said products, shall be fabricated in a signatory shop within an area encompassing the five boroughs of New York City and extending approximately forty (40) miles beyond the city's borders.    Doors, jambs and related components which do not fall within the stated category will be excluded from this provision.

Section 29.    All Carpenters will be allowed a ten (10) minute coffee break in the morning.    This will also be allowed in the afternoon when working forty (40) hours.

## ARTICLE XVIII

### Promotional Fund

The Employer agrees to be bound and to make contributions to the Promotional Fund which is attached to this Collective Bargaining Agreement.

## ARTICLE XIX

### Expiration Clause

This Agreement enters into force on July 01, 2001, and shall be binding on the Employer and the Union, their successors and assigns. The duration of this Agreement shall continue until June 30, 2006 and shall be renewed automatically for one year intervals thereafter unless notice to the other at their last known address has been provided by either party by certified and regular mail no more than ninety (90) days nor no less than sixty (60) days before the contract expiration that such party seeks to negotiate a new contract or modify or amend this Agreement through negotiations. Once negotiations have commenced, neither party will seek to alter unilaterally the terms or conditions of employment of employees covered by this Agreement until such terms have been changed by execution of a newly negotiated agreement.

## ARTICLE XX

### Retroactivity

It is mutually agreed that all wages, fringe benefits and conditions provided for in this Agreement shall be retroactive to July 1, 2001.

61

## ARTICLE XXI

## Effectuating Clause and Signatories

The parties hereto make and enter into this Agreement, in witness whereof, we, their duly authorized and empowered representatives, have hereunto set our hands and seal this _____ day of _____, 200  .

For The Employer:


By:_____    _____
     (Officer's Signature & Title)     (Print Name)

For the Union:

DISTRICT COUNCIL OF NEW YORK CITY
AND VICINITY OF THE UNITED BROTHER-
HOOD OF CARPENTERS AND JOINERS OF
AMERICA, AFL-CIO.



By:_____
     Authorized Signature
     of the District Council


The party of the First Part, herein referred to as the Employer, signatory to this Agreement, hereby acknowledges receipt of copies of the Agreement and Declaration of Trust of the New York City District Council of Carpenters Welfare Fund; Pension Fund; Apprenticeship, Journeymen Retraining, Educational and Industry Fund; United Brotherhood of Carpenters and Joiners of America Fund; New York City and Vicinity Carpenters Labor Management Fund; Supplemental Funds; Annuity Fund; and Vacation Fund.


By:_____    Date:  _____
     (Officer's Signature)

62